STATE OF IOWA ex rel. JAMES BROWN et al., Appellees, v. RALPH BEATON et al., Appellants.

1140

December 15, 1925.

Opinion on Rehearing January 10, 1928.

Rehearing Denied April 5, 1928. .

*Higbee & McEniry* and *Fred Bernstein*, for appellants.

*R. Brown* and *Scott M. Ladd*, for appellees.

Evans, J.—1. The controversy involved herein has been before us in some of its features on two previous occasions: *State ex rel. Brown v. Beaton*, 190 Iowa 216; *State ex rel. Brown v. Beaton*, 193 Iowa 1391. A detailed and chronological statement of the events involved is set forth in the first cited case. We will not here repeat such details, but will state briefly a summary thereof.

The railroad in question herein was a local enterprise, inaugurated about the year 1911. To the promotion of it, gifts were made by persons locally interested therein, and voluntary taxes were voted by the taxpayers. The right of such donors and taxpayers to relief by reason of the dismantling of the railroad is the question involved herein. The bondholders of the railroad obtained a decree of foreclosure in February, 1915. This decree appointed a receiver, and ordered a sale of the road to be made in April, 1915. By later concession or acquiescence, the sale was not then had. The receiver continued in the possession and operation of the road until the year 1918, the oper-

ation being at all times a losing venture. The decree of foreclosure had been entered in the Madison district court by Judge Hays, presiding. In October, 1918, an application was made in vacation to Judge Applegate, one of the judges of Madison district court, who resided in another county of the judicial district. This application prayed for an order pursuant to the original decree, fixing a new date upon which a sale of the property could be had. The order prayed for was made, fixing the date of sale at November 9, 1918. This order conformed to the original decree, save in one respect. It contained a provision that the purchaser at such sale might operate the railroad, or, at his election, might discontinue such operation and dismantle the road. The receiver sale was had on the date fixed, and Beaton and Ornstein were the purchasers, at a bid of $30,000, subject to a tax lien of $8,000. They proceeded to dismantle the property. Thereupon, in June, 1919, Brown and others, who were donors and taxpayers, and who, as such, had contributed to the promotion of the enterprise, filed a petition in equity in the district court of Union County, setting forth their claims under the provisions of Sections 2092 to 2098, above cited, and praying that their claims, as such, be allowed against the defendants and their property, and for equitable relief. They prayed specifically that the defendants be compelled to operate the road; and, in event that this prayer were refused, that, in such alternative, their claims for reimbursement be allowed and protected. The defendants, as purchasers at the receiver sale, answered the petition, and pleaded that proviso in the order of Judge Applegate whereby they were allowed their election to dismantle the road. Upon hearing, the district court of Union County dismissed the petition of these donors and taxpayers. From such decree an appeal was had to this court, and the decree was reversed and the case remanded. 190 Iowa 216. On that appeal we held that the proviso in the order of Judge Applegate upon which the defendants rely, and which permitted the purchasers to dismantle the road, was void and of no effect. One reason for this holding was that the parties in interest were not parties to that proceeding, and that the order was entered without notice to them. We also held that the purchasers of the road took the same charged with the same duties and obligations to the donors and taxpayers as the original owners were under.

We held that it was incumbent upon the defendants to bring a proceeding under Sections 2092 to 2098, and to serve notice upon all parties in interest, and to obtain an adjudication of the claims of each. We remanded the cause to the district court of Union County for further proceedings, and with direction to such court to redocket the case and to retain jurisdiction thereof until relief was had by the petitioners. Upon remand to the Union district court, and upon a redocketing of the case in said court, the petitioners therein filed an application, asking the court to fix a date on or before which the defendants should avail themselves of the provisions of Sections 2092 to 2098, and after which, in the event of the failure of the defendants so to do, the petitioners might present their claims and have the same adjudicated in that case. Such date being fixed by the Union district court, the defendants in 1921 instituted a proceeding pursuant to the directions of our opinion, and brought in, under such statutory provisions, all the donors and taxpayers who had contributed to building the road, and a hearing was there had as to their respective claims. Such claims were established to the extent approximately of $35,000. It may be noted here, for convenience of reference, that the suit brought by these petitioners and appellees in the Union County district court was known therein as No. 8175, and that the proceeding brought therein by these defendants in 1921 was known therein as No. 8540. In case No. 8540 the court entered no judgment, either *in personam* or *in rem*, but made only a finding of facts as to the amounts of the respective claims. The court refused to order execution or to award any remedial provision in that proceeding. Thereupon, the petitioners filed their supplemental petition in case No. 8175, and prayed equitable relief in the enforcement of their claims by process *in rem* against the property that was then in course of being dismantled. The defendants, answering said supplemental petition, pleaded what may be termed as three lines of defense: (1) Prior adjudication, in that the findings of the court in case No. 8540 precluded further litigation; (2) that the statutory provisions relied on by the petitioners were unconstitutional; (3) that the execution sale under which the defendants purchased, was void, and that, therefore, they were entitled to subrogation for the purpose of pursuing and re-

claiming the consideration paid by them pursuant to such alleged void sale.

The trial court entered decree for the petitioners, which was and is conformable to our directions, as set forth in 190 Iowa 216. It is from such decree that the defendants have prosecuted this appeal. A part of the equitable relief awarded by the district court was the appointment of a receiver, who was directed to take possession and to sell the remnant of the dismantled property and to bring the proceeds into court. It appears from the briefs that such receiver did sell such remnant, by mutual consent of the parties, without prejudice to their legal contentions, and that he realized therefrom the sum of $12,000, which sum is now held by him, and becomes in part the subject of the litigation, in lieu of the dismantled property itself.

One of the contentions of the defendant is that all the property had once been sold by the first receiver, and that the jurisdiction of the court was thereby exhausted, and that there was  no power in the court to appoint another receiver and to order another sale of the same property. The record itself has sufficient confusion in it, and this argument only adds confusion to confusion. The foreclosure decree was entered by the district court of Madison County. By such decree a receiver was appointed, to make the foreclosure sale. He made it. There was no appeal from that decree, and it was fully executed. The title of the then owners of the property was fully extinguished by the execution of that decree. These defendants became the purchasers at the execution sale, and thereby succeeded to all the right and title of the original owners. None of the petitioners herein were parties to that foreclosure suit, nor were their rights in any manner adjudicated or affected thereby. The right of these petitioners to maintain their suit in Union County No. 8175 did not arise until the defendants, as the new owners of the railroad, began to dismantle the same. They had accomplished a large part of the dismantling, and had shipped away a large part of the material, before the petitioners instituted their suit. This abandonment and dismantling of the road by the defendants were the first violation of the right of the petitioners, and gave rise to their cause of action. If the first owners had proceeded to dismantle the road, as these owners

have done, the petitioners would have had the same right to proceed against them as they now have to proceed against the present owners. The appointment of a receiver in this proceeding sustains no relation whatever to the foreclosure proceedings in the Madison district court. The fact, therefore, that these defendants acquired the property at a receiver's sale furnishes no exemption to them as against future receivership against them for the enforcement of rights violated by them. As purchasers of a railroad, they thereby assumed the obligation of operating it. When they chose to dismantle it, they thereby assumed the obligations incident to such a course.

2. Was the finding of the district court in case No. 8540 available to the defendants as a defense of prior adjudication? No adequate reason is apparent why two proceedings should be instituted, to perform the functions of one. Be that as it may, the court did not purport to render any adjudication in case No. 8540. It appears that, upon remand of the case from this court (190 Iowa 216), the district court redocketed the case, and entered an interlocutory order in purported conformity to our opinion. From this interlocutory order the defendants appealed to this court, on the ground that the same was *not* in conformity to our opinion. We affirmed the order as made (193 Iowa 1391). This order indicated the course to be pursued by the litigants, giving to the defendants the privilege of instituting the original proceeding for the bringing in of parties, and for the barring of all claimants who should not present their claims by a date fixed therein. Pursuant to our order, the district court retained jurisdiction in case No. 8175, for the very purpose of affording equitable relief in the enforcement of the petitioners' rights. We think that the defendants are concluded at this point, both by reason of our holding on the second appeal and by reason of the fact that no final judgment was ever entered in case No. 8540.

3. The constitutional question is waived by the appellants, and we have only to consider whether they are entitled to any relief on the theory that they purchased property at a void execution sale and received nothing for their purchase price.

If such was their actual situation, then manifestly they should have sought relief in the Madison district court and in

 

the foreclosure case in which the execution sale was had. To grant relief to them on such ground would involve the setting aside of the judicial sale on the ground of a void decree. The proceeding, therefore, should have been had in the court that rendered the decree. The decree of the district court was not held void in any court nor was its validity ever questioned; nor is it true that the defendants received no value in their purchase. They received all that was offered to them. Therefore, even if the district court of Union County could assume jurisdiction to set aside such decree of the Madison district court and to grant such relief, yet no case would be presented by the defendants. Their argument is predicated in the main upon an erroneous statement, doubtless inadvertent, contained in the decree entered by the district court. That statement was as follows:

"That said sale by the receiver appointed by Judge Applegate *was subsequently held invalid by the Supreme Court."*

In this statement the district court erred, and indicated a misconception of what we held (190 Iowa 216). We did not hold the sale to be invalid. What we held was that a certain proviso added to the foreclosure decree in vacation by one of the judges, permitting the purchasers to dismantle the road, was void as to these petitioners, who were not parties to the action, and whose rights could not be adjudicated therein. Whether the invalidity of such proviso could have become a ground for rescinding the sale at the election of the purchasers, as having been innocently misled, we have no occasion to consider. They have never asked a rescission in any court. On the contrary, they availed themselves of their purchase, and have retained the fruits of the same. At the very threshold of these proceedings, and before they were begun, they had already sold and removed two million pounds of steel.

In the rendition of the decree the district court did, therefore, incorporate therein an erroneous statement of fact. Nevertheless, the decretal portion of the judgment was correct. This was, in substance, that the petitioners were entitled to make their claims out of the dismantled property, and that they were entitled to resort to a certain bond which had been given, if the property seized should prove inadequate. The most that can be said, therefore, in criticism of the decree of the district court

is that the court was led thereto by faulty reasoning. The decree being correct in its ultimate effect, and sustainable on proper grounds disclosed in the record, we may not reverse it, even though we disagree with the trial court upon the reasoning by which he was led to it. The erroneous statement of fact may properly be eliminated by disregarding it. The relief granted to the petitioners is in strict conformity to our holding on the first appeal. That of itself should be sufficient reason for its affirmance.

It is, accordingly,—*Affirmed.*

STEVENS, C. J., and DE GRAFF, ALBERT, KINDIG, and WAGNER, JJ., concur.